## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JAMES D. "BUDDY" CALDWELL,**                    **CIVIL ACTION**
**ATTORNEY GENERAL** *ex rel,*
**STATE OF LOUISIANA**

**VERSUS**                                        **NO. 13-701-JJB-RLB**

**ENDO PHARMACEUTICALS INC. &**
**ENDO HEALTH SOLUTIONS INC.**

### NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in Baton Rouge, Louisiana, on June 4, 2014.

                      **RICHARD L. BOURGEOIS, JR.**
                      **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES D. "BUDDY" CALDWELL,                    CIVIL ACTION
ATTORNEY GENERAL *ex rel,*
STATE OF LOUISIANA

VERSUS                                        NO. 13-701-JJB-RLB

ENDO PHARMACEUTICALS INC. &
ENDO HEALTH SOLUTIONS INC.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on referral from the district judge of the plaintiff's motion to remand. (R. Doc. 5). The motion is opposed. (R. Doc. 7).[1] After careful review of the pleadings, arguments of the parties, and applicable law, it is the recommendation of the magistrate judge that the plaintiff's motion to remand should be granted.

I.      Background

On September 17, 2013, the State of Louisiana, through its Attorney General, (the "State" or "plaintiff") filed a *parens patriae* action against defendants Endo Pharmaceutical Inc. & Endo Health Solutions Inc. (collectively, "Endo" or "defendants") in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana. (R. Doc. 1-2, "Petition"). The State alleges that the defendants are liable under various state laws for misrepresentations, misbranding, and false or fraudulent statements and claims made to illegally market and promote the drug Lidoderm for unapproved off-label uses. (Petition, ¶ 1). The State alleges that the defendants' activities caused the submission of false or fraudulent claims to Louisiana's medical assistance programs,

---

[1] Plaintiff has filed a Reply (R. Doc. 15) without leave of court.

thereby defrauding the State out of millions of dollars that it would not have paid but for the defendants' illegal conduct.  (Petition, ¶ 1).

The State alleges that the single approved use of Lidoderm by the U.S. Food and Drug Administration ("FDA") is to relieve the pain of post-herpetic neuralgia (PHN), a rare form of nerve pain caused by shingles.  (Petition, ¶¶ 3-5).  The State alleges that the defendants have falsely promoted Lidoderm "for the treatment of general neuropathic pain, low back pain, chronic axial low back pain, and carpal tunnel disorder despite" having concluded through its own clinical studies that Lidoderm has no greater efficacy than placebos for these off-label uses. (Petition, ¶¶ 3-5).

The State further alleges that the defendants engaged in this illegal scheme from approximately 1999 to the present.  (Petition, ¶ 2).  The State generally describes the alleged scheme as including the following nonexclusive list of unlawful actions: repeatedly publishing and promoting false and misleading accounts of studies and treatment guidelines for the purpose of convincing doctors, healthcare providers, prescribers, medical assistance programs and public health policy makers to prescribe and/or recommend the use of Lidoderm; misrepresenting clinical evidence about Lidoderm; downplaying or ignoring safety risks of Lidoderm; failing to disclose that the claims they were making about Lidoderm had been rejected by the FDA; marketing and promoting Lidoderm for uses that the FDA has not approved as safe and effective; and, using a wide variety of gifts, payments and other forms illegal remuneration, such as dinners, trips, and medical education credits, to induce doctors, healthcare providers and prescribers to prescribe and/or recommend Lidoderm.  (Petition, ¶ 2).

The State alleges that it is entitled to relief for (1) Endo's violations of Louisiana's Medical Assistance Programs Integrity Law ("MAPIL"), La. R.S. 46:437.1 *et seq.* (Petition, ¶¶

241-256); (2) Endo's violations of Louisiana's Unfair Trade Practices Act (LUTPA), La. R.S. 51:1401, *et seq*. (Petition, ¶¶ 257-263); (3) Redhibition under La. C.C. 2520 *et seq*. (Petition, ¶¶ 264-271); (4) Fraud under La. C.C. 1953 (Petition, ¶¶ 272-282); and (5) Unjust Enrichment under La. C.C. 2298 (Petition, ¶¶ 283-290). The State specifically alleges that the action is brought exclusively under the laws and statutes of Louisiana, no claims arising under the laws of the United States are asserted, and this is not "an action for monetary damages generally, for individuals, or classes or groups of individuals who suffered financial losses or personal injuries as the result of the purchase or use" of Lidoderm. (Petition, ¶ 10). The State seeks to recover "statutory civil fines and penalties via the enforcement powers of the Louisiana Attorney General." (Petition, ¶¶ 9-10).

On October 5, 2013, the defendants removed the case alleging that the court has subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331, and the Class Action Fairness Act ("CAFA"). For federal question jurisdiction, the defendants claim that the allegations underlying the plaintiff's state law claims raise substantial and disputed issues of federal law. More specifically, the defendants claim that a finding that they are liable under state law requires a predicate finding that they violated federal laws and regulations governing off-label promotion of prescription drugs and Medicaid reimbursement. First, the defendants allege that the state law claims require the interpretation of the State's obligations to reimburse Lidoderm through its Medicaid program as required by the federal Medicaid Act, 42 U.S.C. § 1396 *et seq.* Second, the defendants allege that the court has federal question jurisdiction because the State, through its fraud claim, seeks to void a federal rebate agreement governed by federal law and required by the Medicaid Act. Third, the defendants allege that the Food Drug and Cosmetic Act ("FDCA") governs the promotion by pharmaceutical manufactures of off-label

3

uses of their prescription drugs and, accordingly, the State's allegations regarding false and fraudulent off-label promotions of Lidoderm are governed by the FDCA and FDA regulations, not state law. The defendants claim that the foregoing federal issues are necessary for the resolution of the plaintiff's state law claims, are substantial and actually disputed, and federal jurisdiction will not disturb the balance of federal and state responsibilities.

The defendants also allege that the case satisfies the mass action provisions of CAFA because the real parties in interest to this action are the individual consumers of Liboderm, and those individual consumers are citizens of Louisiana and number over 100. The defendants allege that at least one of the real parties in interest has a claim in excess of $75,000, and the aggregate amount in controversy also exceeds $5,000,000.

## II.    Arguments of the Parties

The State moves to remand on the basis that there is no federal question or CAFA jurisdiction. The State argues that it has alleged only state law claims under MAPIL, LUTPA, redhibition, fraud, and unjust enrichment in the Petition, and that those claims do not support a finding of federal question jurisdiction. The State emphasizes that neither the Medicaid Act nor the FDCA create a private right of action. The State argues that its MAPIL and redhibition claims do not raise the issue of whether the state has certain reimbursement obligations under the Medicaid Act. The State also argues that courts have distinguished the issue of whether states have authority under the Medicaid Act to prospectively refuse reimbursement from the separate issue of whether those states have the right to seek state law remedies for claims that should not have been submitted in the first place. The State asserts that it does not seek rescission of the defendants' federal rebate agreement and that its fraud claims are directed at a supplemental rebate agreement entered between the State and the defendants. With regard to CAFA

4

jurisdiction, the State does not contest that the amount-in-controversy requirement is satisfied or that there is not minimal diversity. Instead, the State argues that CAFA's numerosity requirement is not satisfied because the State is the only party in interest.

As in their Notice of Removal, the defendants argue that the allegations underlying the state law claims necessarily raise substantial and disputed federal issues related to the interpretation of the reimbursement provisions of the Medicaid Act, a federal rebate agreement entered into under the Medicaid Act, and the FDCA and FDA regulations. The defendants clarify that their argument that the reimbursement provision of the Medicaid Act are implicated by the State's MAPIL and redhibition claims. The defendants argue that, in light of the complex federal regulatory regimes regarding prescription drugs, there is a strong federal interest in providing a federal forum to address these allegedly substantial and disputed questions of federal law. With regard to CAFA jurisdiction, the defendants argue the State has alleged a mass action under CAFA because the State represents the interests of over 100 real parties in interest.

## III.    Law and Analysis

### A.    Federal Question Jurisdiction

This court has original subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Nevertheless, because federal courts are courts of limited jurisdiction, it is presumed that a suit removed to federal court lies outside this limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The party seeking removal bears the burden of demonstrating that a federal question exists. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). A federal question exists "if there appears on the face of the complaint some substantial, disputed question of federal law." *In re*

5

*Hot–Hed, Inc.*, 477 F.3d 320 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)).

Whether a case is removable upon the basis of federal question jurisdiction is to be determined by the allegations of the plaintiff's "well-pleaded complaint" as of the time of removal. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001). Because the plaintiff is the master of his complaint, even where both federal and state remedies are available on a given set of facts, there will be no basis for removal on federal question jurisdiction if the plaintiff elects in the state court petition to proceed exclusively under state law. *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir. 1995). That federal law may provide a defense to a state law claim is insufficient to establish federal question jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328-29 (5th Cir. 2008).

Federal question jurisdiction is generally invoked by the plaintiff pleading a cause of action created by federal law. The Supreme Court has held, however, that federal question jurisdiction may exist over state law claims that implicate significant and disputed federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (quiet title action by former landowner brought in state court against tax sale purchaser presented a removable federal question because the plaintiff alleged the IRS failed to give him independent notice of the sale as required by federal law). A federal issue is embedded in a state law cause of action, and will confer federal question jurisdiction under 28 U.S.C. § 1331, "where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th

Cir. 2008) (citing *Grable*, 545 U.S. at 314). The lack of a private cause of action under federal law is relevant to, but not dispositive of, the question of whether the right is substantial enough to satisfy the exercise of federal jurisdiction. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 n. 12 (1986). Furthermore, the substantiality requirement looks "to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 133 S. Ct. 1059, 1066 (2013).

The Supreme Court has limited the scope of federal question jurisdiction of the type discussed in *Grable* to only a "slim category" of cases. For example, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the health insurance carrier for federal employees sued to recover health insurance benefits it had paid to a former enrollee because the enrollee had recovered damages for his injuries in a state court action. The insurer's claim arose under state contract law, but the insurer asserted that because the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits, the FEHBA was a necessary element of the insurer's claim. The Supreme Court concluded that this action did not "fit within the special and small category" of cases described in *Grable*. *Id.* at 699. The court distinguished *Grable* on two primary grounds. First, the dispute in *Grable* centered on action by a federal agency (the IRS) and whether that action was compatible with a federal statute. *Id.* at 700. In contrast, the dispute in *Empire* centered on action by non-government persons and entities. *Id.* Second, *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax cases." *Id.* In contrast, the reimbursement claim in *Empire* was "fact-bound and situation-specific." *Id.* at 701. Accordingly, the Court found that the state court was competent to apply federal law to the extent necessary to resolve the amount of the insurer's state law reimbursement claim. *Id.*

More recently, the Supreme Court concluded that 28 U.S.C. § 1338(a), which provides for exclusive federal jurisdiction over any case "arising under any Act of Congress relating to Congress," does not deprive state courts of subject matter jurisdiction over malpractice claims related to federal patent infringement suits. *Gunn*, 133 S.Ct. 1059. In *Gunn*, the Court concluded that resolution of an "actually disputed" issue of federal patent law was "necessary" to resolving the malpractice claim. The Court concluded, however, that the substantiality requirement, which looks "to the importance of the issue to the federal system as a whole," was not satisfied. *Id*. at 1066. The state law inquiry into whether legal malpractice was committed would only require the state court to determine hypothetical questions of patent law. The court concluded that because the substantiality requirement was not met, it followed that allowing the state court to adjudicate the action would not interfere with the appropriate federal-state balance. *Id*., at 1068.

With these precedents in mind, the court now turns to whether this action raises any disputed and substantial federal issues that are necessary to the resolution of the plaintiff's state-law claims, and, if so, whether the finding of federal jurisdiction over those state law claims would disturb the balance of federal and state judicial responsibilities. *See Singh,* 538 F.3d 334, 338 (citing *Grable*, 545 U.S. at 314).

Reading the Petition as a whole supports a finding that the State's claims are not just based on the defendants' marketing and promotion of Lidoderm for unapproved and off-label uses, but also that they did so by engaging in intentionally false, fraudulent, and misleading conduct. That conduct allegedly constituted an unfair method of competition, or unfair, deceptive acts or practices under the LUTPA, allegedly caused the submission of false of fraudulent claims for payment from the State's medical assistance programs, and underlie the

8

State's state law claims for redhibition, fraud, and unjust enrichment.  Thus, the defendants'

liability under these state law claims will depend on whether their conduct is ultimately

determined to be unfair, deceptive, false, or fraudulent as defined and interpreted by the

applicable state laws.  The allegations as a whole do not establish that the violation of any federal

law or regulation will be a substantial issue in determining whether the defendants' conduct

violated state law.

The defendants argue, however, that at least three federal issues must be resolved in order

to resolve the State's claims under state law.  The defendants assert that the state law claims

brought by the State implicate the Medicaid Act, the defendants' federal rebate agreement under

the Medicaid Act, and the FDCA and FDA regulations.  The defendants further assert that these

federal issues are actually disputed and substantial.

### 1.    The Federal Medicaid Act

The defendants argue that the "falsity" and "causation" elements of the State's MAPIL

and redhibition claims turn on the issue of whether the State has authority under the Medicaid

Act to decline reimbursement for Lidoderm had it known of the Defendants' purported

misconduct.  (R. Doc. 7 at 4).

To succeed on its claim for damages under MAPIL, the state must prove that the

defendants violated the statute causing "false or fraudulent" claims to be made.  *See Caldwell ex.*

*Rel. Louisiana v. Bristol Myers-Squibb Sanofi Pharms. Holding P'ship*, No. 12-cv-443, 2012

WL 3866493, at *3 (W.D. La. Sept. 4, 2012) (citing La. R.S. § 46:438.3(A)).  The State must

prove that it paid more for Medicaid reimbursements than it would have paid absent the alleged

false or fraudulent conduct.  *See* La. R.S. § 46:438.6(A)(2).  The defendants argue that

interpretation of the federal Medicaid Act will be necessary to determine whether these two

elements of a MAPIL claim are satisfied.  (R. Doc. 7 at 6).  The court disagrees.  At most, the State's MAPIL claim will require the state court to first determine whether the State has a duty of reimbursement under the Medicaid Act.  Even if this inquiry meets the first prong of the *Grable* analysis, the defendants have not established that this issue of federal law is actually disputed or substantial.  At most, the state court's inquiry into the Medicaid Act would serve as background reference for the state law claims, including whether and to what degree the State had a duty to reimburse claims.  The State's claims turn on whether the prescribing physicians would have prescribed Lidoderm in the first place, not on whether the State has the authority to deny reimbursements under the Medicaid Act.  Accordingly, any inquiry by the state court would concern an undisputed area of federal law that is unimportant to the federal system as a whole. *Gunn*, 133 St. Ct. at 1066.

There does not appear to be an actual dispute regarding the State's reimbursement duties under the Medicaid Act.  The State alleges that the defendants' false or fraudulent representations regarding Lidoderm, and illegal remuneration, caused physicians and other healthcare providers to prescribe Lidoderm for an unapproved off-label use.  (Petition, ¶¶ 241-245).  The State further alleges that these acts resulted in the submission of claims to the state that would not have been made but for the defendants' illegal activity.  (Petition, ¶¶ 247-249). The State does not allege that it did not have a duty under the Medicaid Act to make the reimbursements in the first place; instead, it alleges that it has a claim for recovery of those payments under state law.

Courts have distinguished a state's ability to recover under state law where the defendant caused the state's Medicaid program to reimburse claims which would never have been submitted but for the violation of state law from the state's authority under the Medicaid Act to

prospectively refuse reimbursement.  *See Bristol Myers-Squibb Sanofi*, 2012 WL 3866493, at *3 (finding no question of federal law required resolution as a predicate to resolving a state law MAPIL claim for recovery regarding allegedly fraudulently obtained reimbursement for prescription drugs because the State could prove its MAPIL claim "by merely showing that the defendants' false or misleading advertising caused physicians to write prescriptions they would not have written had they known all of the facts, since obviously the state would not have to pay claims that were never made") (citing *New Mexico v. Ortho–McNeil–Janssen Pharms., Inc.,* No. 08–0779, slip op., at 4 (D.N.M. Jan. 26, 2009)).

The defendants similarly argue that the State's redhibition claim raises the federal issue of the State's authority to decline to reimburse under the Medicaid Act.  (R. Doc. 7 at 5).  To succeed on a redhibition claim under Louisiana law, the plaintiff must prove the following elements:  "(1) the thing sold is absolutely useless for its intended purposes, or that he would not have bought it had he known of the defect; (2) that the defect existed at the time that he purchased the thing, but was neither known nor apparent to him; and (3) that the seller was given the opportunity to repair the defect."  *In re Vioxx Products Liab. Litig.*, MDL 1657, 2010 WL 2649513, at *12 (E.D. La. June 29, 2010) (citing *Alston v. Fleetwood Motor Homes of Indiana*, 480 F.2d 695, 699 (5th Cir. 2007)).  The State alleges that "Endo warranted to the State . . . that Endo's Lidoderm® was free of any redhibitory defect," but that such a defect "existed at the time Endo's Lidoderm® was purchased and/or paid for by the State," and "as a direct result of this breach of warranty, the State has suffered and will continue to suffer damages."  (Petition, ¶¶ 265, 268, 270).  As with the State's MAPIL claim, the State asserts its redhibition claim under the theory that "Louisiana health care professionals would not have prescribed Endo's Lidoderm® for . . . unapproved indications and uses, and consequently, the State would not have

11

reimbursed claims submitted for payment for Endo's Lidoderm®." (Petition, ¶ 267). As with the MAPIL claims, whether the State can recover under Louisiana's redhibition law will not turn on an interpretation of the State's reimbursement duties under Medicaid. Instead, it will turn on whether the defendants' representations to prescribers of Lidoderm resulted in sales that would not have occurred had those prescribers known the true efficacy of the drug. Even if this inquiry into the State's obligations under the Medicaid Act satisfies the first prong of the *Grable* analysis, the defendants have not established that this issue is actually disputed or substantial, and therefore does not raise a federal question.

In concluding that the plaintiff's redhibition claim does not raise a federal question, the court distinguishes *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657. In that action, the State tried to prove its redhibition claim by alleging that had it known of Vioxx's defects, the State Medicaid program would have stopped reimbursing prescriptions for it. *Id.* at *12. The State's petition alleged that the State "would not have approved and paid for . . [any] Vioxx use by Louisiana citizens." *Louisiana v. Merck & Co., Inc.*, No. 2:05-cv-3700-EEF-DEK (E.D. La.), Dkt. No. 1-2. This allegation raises an issue of federal law—whether the State of Louisiana had a duty to reimburse payments for Vioxx under the Medicaid Act. As discussed above, the redhibition claim in this action does not turn on whether the State could refuse to make reimbursement payments under the Medicaid Act; instead, it turns on whether the State can recover damages, under its redhibition claim, for false or fraudulent conduct that induced healthcare providers to prescribe Endo's Lidoderm thereby causing the State to make payments that would never have been submitted but for the defendants' allegedly fraudulent acts.

Finally, with regard to both the MAPIL and fraud claim, the court finds it noteworthy that the Medicaid Act includes no private right of action and actually specifically obligates states to

seek reimbursement of Medicaid funds from legally liable third parties.  *See* 42 U.S.C. § 1396a(a)(25)(A).  "Thus, Congress arguably intended actions such as this—brought by a state attorney general to seek reimbursement of Medicaid funds from an allegedly liable third party—to be litigated in state court." *In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 600 (S.D.N.Y. 2011) (citations omitted); *see also New York v. Lutheran Ctr. for the Aging, Inc.*, 957 F. Supp. 393, 403 (E.D.N.Y. 1997) ("Where a federal statute such as Medicaid requires a State to enforce liability against a third party but does not provide the ground for that liability, federal question jurisdiction will not lie.").  That there is no private cause of action under the Medicaid Act, combined with the state's ability to enforce liability against third parties under state law, further leads to the conclusion that any necessary background review of the Medicaid Act for resolution of the MAPIL and fraud claim is not "substantial" for the purpose of establishing federal question jurisdiction. *See Merrell Dow*, 478 U.S. at 814 n. 12.

### 2.    The Federal Medicaid Rebate Agreement

The defendants also argue that the Petition implicates the Medicaid Act in light of the existence of a federal rebate agreement between Endo and the Secretary of the U.S Department of Health and Human Services ("HHS"), which is required for the inclusion of Lidoderm as a covered outpatient drug under Medicaid.  The defendants argue that the State's fraud claims must be based on a contractual agreement and assumes that the existing federal rebate agreement is the contract implicated by the Plaintiff's fraud claim.  (R. Doc. 7 at 10-12).

The defendants are correct that the Louisiana fraud statute requires a contractual agreement.  *See* La C.C. art. 1953.  The State's fraud allegations, however, concern a supplemental rebate agreement entered into between the State and Endo.  (Petition, ¶¶ 50-52, 274).  The State does not dispute that Lidoderm is a "covered outpatient drug" based upon the

13

federal rebate agreement.  (R. Doc. 15 at 10).   The State represents that it is not seeking to invalidate the federal rebate agreement relating to Lidoderm.  (R. Doc. 15 at 10).  Instead, the State claims to be seeking damages for fraud based upon the supplemental rebate agreement between the State and Endo.  Accordingly, the court finds that the State's claims do not require the resolution of any disputed and substantial federal issues regarding the legality or interpretation of the federal rebate agreement between Endo and the Secretary of HHS, or any federal laws and regulations governing federal contracts.

### 3.    The Food Drug and Cosmetic Act

Finally, the defendants argue that the state-law claims are premised on off-label promotion allegations that require interpretation and application of the FDCA and FDA regulations.  (R. Doc. 7 at 7-10).  The FDCA and FDA regulations govern whether, and the degree to which, the defendants are allowed to promote their drugs for off-label uses as determined by federal law.  *See* 21 U.S.C. § 355; 21 C.F.R. §§ 201.56, 201.57 (FDA approval process requires a showing that prescription drugs are "safe and effective" for their labeled uses). Accordingly, the defendants argue that the resolution of these federal issues is a necessary predicate to resolving the state law claims, and that those issues are disputed and substantial.

This court addressed a similar argument in *Louisiana ex. rel. Caldwell v. Abbott Labs*, No. 11-cv-542 (M.D. La. Mar. 28, 2012), Dkt. Nos. 14, 17.  In *Abbott*, the State brought a *parens patriae* action against the defendants alleging similar claims under MAPIL, LUTPA, redhibition, fraud, and unjust enrichment.  The court concluded that "the gravamen of the plaintiff's alleged violations of state law is not that Abbott simply promoted and marketed Depakote products for off-label uses, but that they did so by false, fraudulent and misleading practices."  *Id*. at 11.  The court further concluded that the determination of whether the defendant's actions violated state

law would require examination of the federally-approved label to the off-label uses being promoted and marketed, but liability under the state law claims would not depend on that inquiry. *Id*. at 13. Instead, liability would turn on whether the defendant's conduct was false or misleading, as defined by the relevant state law. *Id*. As in *Abbott*, the general references to the FDCA, FDA regulations, and labeling in the petition "do not necessarily indicate the presence of a disputed, substantial federal issue. *Id*. at 22.

The *Merrell Dow* decision, which preceded *Grable* by nearly two decades, supports the conclusion that Endo's assertion of a FDCA violation does not raise a substantial federal issue that must be resolved to determine the Plaintiff's state law claims. *See Merrell Dow*, 478 U.S. 804. In *Merrell Dow*, the defendant removed a state court petition that alleged only state law claims of negligence, breach of warranty, strict liability, fraud, and gross negligence against the manufacturer of the prescription drug Bendectin. The plaintiff alleged that because the label on the drug did not adequately warn that its use was potentially dangerous, it was misbranded in violation of the FDCA, and this created a rebuttable presumption of negligence under state law. The Court held that the complaint alleging a violation of the FDCA as an element of a state law cause of action did not give rise to a federal claim under § 1331. As explained in *Grable*, the important factors at work in *Merrell Dow* that led to this conclusion were: (1) Congress did not create a private remedy for violations of the FDCA, or federal preemption of state remedies for misbranding; (2) if alleging the violation of federal standards for labeling prescription drugs could get a state claim into federal court, so could alleging the violation of any other federal standards without a federal cause of action; and, (3) this would result in a large number of cases raising other state law claims with embedded federal issues being filed in and removed to the federal courts. *Grable*, 545 U.S. at 317-319.

The same issues addressed in the *Merrell Dow* decision are implicated by this case. There is no private right of action under the FDCA.  *Merrell Dow*, 478 U.S. 804.  The State has brought state law claims under MAPIL, LUTPA, redhibition, fraud, and unjust enrichment.  The defendants do not argue that the FDCA completely preempts these state law claims.  That these claims may require the state court to determine the federal standards for prescription drug labeling, allowing these state law claims to create federal question jurisdiction in the absence of a federal cause of action would result in the removal of nearly any action by a state's attorney general against a pharmaceutical company regarding prescription drugs.

### 4.     Balance of Federal and State Judicial Responsibilities

Unlike the "nearly pure question of law" presented in *Grable*, where the federal issue was dispositive of the case and would be controlling in numerous other cases, this action involves a highly "fact bound and situation-specific" regarding the defendants' allegedly fraudulent conduct.  *McVeigh*, 547 U.S. at 700-701.  The state court is equipped to engage in this inquiry and resolve undisputed and non-substantial issues of federal law as required for resolving the state law claims.  Having concluded that there are no actually disputed and substantial issues of federal law, the court need not engage in further analysis of whether finding federal question jurisdiction would disrupt the balance of federal and state judicial responsibilities.

### B.     CAFA Jurisdiction

In the alternative, the Defendants claim the court has subject matter jurisdiction over the State's claims because it has brought a "mass action" under CAFA.[2]   A "mass action" is defined under CAFA as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a

---

[2] The Defendants do not argue that the State's action is a "class action" under CAFA.

mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]."  28 U.S.C.A. § 1332(d)(11)(B)(i).  In addition to the numerosity requirement, there must be minimal diversity and the aggregate amount in controversy must exceed $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2), (5), (6), (11).

This action is a *parens patriae* action.  The Petition alleges that the suit is brought for and on behalf of the State of Louisiana, by and through James D. "Buddy" Caldwell, its Attorney General and the chief law officer of the State who is statutorily authorized to initiate and prosecute all suits necessary for the protection of the interests and rights of the State.[3]  The Petition also specifically alleges that the suit is brought by the State and "is *not* an action for monetary damages generally, for individuals, or classes or groups of individuals who suffered financial losses or personal injuries as a result of the purchase or use of Lidoderm." (Petition, ¶ 10).

Despite these allegations in the Petition, the defendants argue that, by piercing the pleadings, the court should conclude that the State is a nominal party, and that the real parties in interest are the individual Louisiana patients/consumers who purchased and used Lidoderm and suffered injuries as a result.  The defendants argue that once the pleadings are pierced, the State's action is to be considered a "mass action" under CAFA because it involves common questions of law or fact and seeks monetary relief for the benefit of 100 or more persons.  In support of this position, the defendants rely upon *Louisiana ex. rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008) and *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 800 (5th Cir. 2012) *cert. granted*, 133 S. Ct. 2736 (U.S. 2013) and *rev'd and remanded*, 134 S. Ct. 736 (U.S. 2014).

---

[3] The State claims that these statutory enforcement powers under Louisiana law include, but are not limited to, La. R.S. §§13:5036, 51:1404, 51:1407, 51:1414, 46:438.1, 46:438.5; 46:438.6, and 51:138.  (R. Doc. 5-1 at 2 n. 1).

Until recently, the United States Court of Appeals for the Fifth Circuit required district courts to "look to the substance of the complaint—to pierce the pleadings—and to determine the real nature of the claim asserted" for the purpose of determining CAFA jurisdiction. *Allstate*, 536 F.3d at 423. Under this analysis, where the state brought a *parens patriae* action, the court could find CAFA jurisdiction if the "real parties-in-interest" were individual citizens and the requirements for a CAFA mass action were satisfied. This analysis has been foreclosed by the United States Supreme Court. *See AU Optronics Corp.*, 134 S. Ct. 736.

In *Au Optronics Corp*, the Mississippi attorney general filed a state court *parens patriae* suit on behalf of the State of Mississippi against various manufacturers, distributors, marketers, and sellers of liquid crystal display (LCD) panels alleging that the defendants had engaged in a price-fixing scheme in violation of Mississippi's consumer protection and antitrust laws. 701 F.3d 796. The Fifth Circuit concluded that the district court had subject matter jurisdiction under CAFA because the action qualified as a "mass action." *Id.* The Fifth Circuit concluded that the state was acting more like a class representative than in its *parens patriae* capacity and the individuals who purchased the LCD panels within Mississippi were the real parties in interest because the complaint alleged that the state was bringing the action on their behalf, the relief sought was to remedy those injuries with money damages, and state did not have statutory authority to recover for injuries to those individuals. *Id*.

On appeal, the United States Supreme Court reversed, concluding that a *parens patriae* action cannot qualify as a "mass action" under CAFA because there is only one named plaintiff. *AU Optronics Corp.*, 134 S. Ct. 736. The Court reasoned that although "the diversity jurisdiction statute . . . require[s] courts in certain contexts to look behind the pleadings," the real-party-in-interest inquiry does not apply to CAFA. *Id.* at 745. The Court concluded that inquiries beyond

18

the pleadings had not been designed for "count[ing] up additional unnamed parties in order to satisfy the mass action provision's numerosity requirement." *Id*. at 746.  Furthermore, that CAFA precludes mass action claims "joined upon motion of defendant" demonstrates that the parties of a mass action must be defined by "the persons who are actually proposing to join together as named plaintiffs in the suit." *Id*.

The only named plaintiff in this action is the State of Louisiana.  Accordingly, the court does not have subject matter jurisdiction over this action on the basis that this is a "mass action" under CAFA  *Id*.  *See also Louisiana v. Zealandia Holding Co., Inc.*, No. 13-6724, 2014 WL 1378874 (E.D. La. Apr. 8, 2014) (holding that *parens patriae* suit brought by the Louisiana Attorney General does not support CAFA jurisdiction under the theory that it is a "mass action" because Louisiana is the only plaintiff) (citing *AU Optronics Corp*., 134 S. Ct. at 746)).

**IV.     Conclusion**

This court does not have subject matter jurisdiction over this action under either the federal question statute or CAFA.  With regard to federal question jurisdiction, the defendants have arguably established that certain federal law and regulations, and consequently "federal issues" related to Medicaid and the FDCA, will be a necessary aspect of the state law claims alleged by the State.  Nevertheless, these arguments fail to establish that the federal issues are actually disputed and substantial, or that exercising federal jurisdiction will not disrupt the federal-state balance of judicial responsibilities struck by Congress.  With regard to CAFA jurisdiction, the U.S. Supreme Court has foreclosed the argument that a *parens patriae* action with only the State as the named plaintiff can constitute a "mass action" under CAFA.

## <u>RECOMMENDATION</u>

For the foregoing reasons, it is the recommendation of the magistrate judge that the

instant action should be **REMANDED** to the 19th Judicial District Court, East Baton Rouge

Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on June 4, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**